In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-2118

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERID HINZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-cr-115-jdp-1 — **James D. Peterson**, *Chief Judge.*

ARGUED JUNE 2, 2026 — DECIDED AUGUST 13, 2026

Before JACKSON-AKIWUMI, LEE, and TAIBLESON, *Circuit Judges.*

PER CURIAM. After Jerid Hinz violated the conditions of his supervised release, the district court revoked his supervision and imposed 24 months' imprisonment without a new term of supervised release to follow. In its subsequent written order, the court imposed a condition requiring that Hinz "is to be registered with local law enforcement agencies and the state attorney general before his release from confinement." Hinz appeals, contending that the court relied on inaccurate

information at sentencing and that it did not have authority to impose the condition on his release. Though we disagree that the court relied on inaccurate information in sentencing Hinz, we agree with Hinz that the court exceeded its authority by imposing the condition upon his release. We therefore modify the judgment to remove the registration requirement and, as modified, affirm.

## I. Background

Following his conviction for distributing methamphetamine, 21 U.S.C. § 841(a)(l), (b)(l)(C), Jerid Hinz was sentenced to 18 months' imprisonment followed by a five-year term of supervised release. Hinz completed his term of imprisonment and was released in June 2024. The court revoked his supervision on two occasions, the latter of which is the subject of this appeal.

The first revocation occurred in September 2024 after the court found that Hinz had violated conditions requiring him to abstain from using and possessing illegal controlled substances and to participate in substance abuse treatment, report for drug testing, and maintain lawful employment. The court, noting that Hinz had been arrested in Wisconsin on August 1, 2024, and charged with resisting an officer and possessing narcotics (among other things), *see Wisconsin v. Hinz*, No. 2024CF001839 (Dane Cnty. Cir. Ct. Aug. 2, 2024), imposed three months' imprisonment and four years' supervised release. Hinz served the prison term and was released in December 2024.

In February 2025, Hinz's probation officer filed a petition alleging new violations: On two occasions in December 2024 and January 2025, Hinz tested positive for methamphetamine and admitted to using it; he once attempted to provide fake

urine to pass a drug test; and on other occasions, Hinz did not report for drug testing.

The officer also alleged that Hinz violated the conditions prohibiting him from committing another crime and possessing a gun or ammunition. The officer alleged that police in Madison, Wisconsin, arrested Hinz on February 15, 2025, following a report that he fired a gun at an unknown male outside Hinz's apartment, striking the man in the torso. The man survived and identified Hinz as the shooter, prompting police to search Hinz's apartment where they found prescription pills and a handgun. Though Hinz was not home during the search, police later located him at a nearby hotel, arrested him, and discovered a baggie of methamphetamine in his pocket. Dane County prosecutors charged him only with felony bail jumping and possessing methamphetamine. *See Wisconsin v. Hinz*, No. 2025CF000445 (Dane Cnty. Cir. Ct. Feb. 18, 2025). On June 5, 2025, these new charges were dismissed but read in at sentencing for the 2024 state case where Hinz had agreed to plead guilty. *See id.*

In response to the petition to revoke his supervision, Hinz admitted that he violated conditions requiring him to: refrain from using or possessing any controlled substance; report to his probation officer and complete written reports; seek and maintain lawful employment; and refrain from committing another crime, though he did not identify a specific offense. Hinz denied having a gun. He requested a sentence of one year and one day.

At the revocation hearing on June 23, 2025, the court acknowledged that Hinz admitted to certain violations and sought to clarify what new offenses Hinz had committed. The government pointed to Hinz's 2024 state offenses, but the court recognized correctly that those offenses were not new

because Hinz committed them before his first revocation hearing. Defense counsel explained that the new charges were from the 2025 state case, and the court recognized that the charges—bail jumping and possession of methamphetamine—had been dismissed but read in at sentencing in the 2024 state case. When pressed, defense counsel admitted that the court could consider those charges. The court then recognized there was an ongoing dispute about "the charged criminal conduct" related to the shooting and the possession of a gun, and that Hinz denied possessing or firing a gun. With that sorted, the court set the allegations related to the shooting aside.

The government confirmed it was pursuing violations based only on the conduct Hinz admitted to and—because of Hinz's positive drug tests and possession of a controlled substance—asked for the maximum term of two years' imprisonment. The government explained that Hinz had not participated in programming and that his conduct (including in both state cases) was "fairly serious." Regarding Hinz's alleged possession of a gun and the shooting incident, the government said it was preparing to bring a gun trafficking charge to a grand jury in the next few months and suggested that, given the escalating nature of his conduct, Hinz should "be incapacitated" to protect himself and others.

At the close of the revocation hearing, the court pronounced its sentence: 24 months' imprisonment with no supervised release to follow. The court explained that it had reviewed Hinz's original presentence report and considered his history of mental health struggles and recidivism. The court calculated a policy-statement advisory range of 21 to 27 months based on the most serious infraction, a grade B violation, and Hinz's criminal history category of VI. And the court recognized that the maximum term of reimprisonment

was 24 months. *See* 18 U.S.C. § 3583(e)(3). In imposing that maximum term, the court commented that Hinz's prior sentences were lenient. "Even setting aside the allegations that aren't really at issue here," the court remarked, Hinz's violations were "very serious." The court further observed that Hinz "has a history of becoming violent when he's not in treatment," and his resistance to supervision posed a risk to himself and to the public.

Three days after the hearing, the court issued a written order. The order first specified that Hinz had violated the mandatory condition prohibiting him from committing another offense and possessing a gun or ammunition. The order explained that Hinz also "faces new charges" but because he had not stipulated to the underlying conduct, the court would "not consider it." The order then detailed the alleged shooting incident, the search of Hinz's apartment, and his arrest at the hotel, which resulted in the charges for bail jumping and possessing methamphetamine. Those charges, the order clarified, had been dismissed and read in during Hinz's sentencing in the 2024 state case. The order noted that Hinz had not been charged in relation to the shooting or the prohibited items police recovered from his apartment. Likewise, the order stated that the government was not pursuing alleged violations related to the shooting, and the court would not consider the allegations. Lastly, the order detailed Hinz's stipulated violations, concluded that those violations warranted revocation, and declared that Hinz "is to be registered with local law enforcement agencies and the state attorney general before his release from confinement."

## II. Discussion

On appeal, Hinz raises two challenges to his sentence. First, he argues the court erred by: (1) sentencing him for

violating the condition of his release prohibiting him from using or possessing a gun, even though he disputed the allegation and the government did not pursue that violation; and (2) by relying on unproven allegations that he had been violent, even though the government presented no evidence of violent behavior. Second, Hinz argues that the court exceeded its authority by ordering him to "be registered" with Wisconsin officials upon his release from prison when the court did not impose another term of supervised release.

This court reviews de novo constitutional challenges to revocation proceedings. *United States v. Harris*, 118 F.4th 875, 885 (7th Cir. 2024). "In general, we review the revocation of supervised release for abuse of discretion, and we review the district court's factual findings supporting that revocation for clear error." *United States v. Perez*, 99 F.4th 972, 976 (7th Cir. 2024) (quoting *United States v. Patlan*, 31 F.4th 552, 556 (7th Cir. 2022)).

The Fifth Amendment guarantees a convicted defendant the due process right to be sentenced based on accurate and reliable information. *United States v. Jones*, 56 F.4th 455, 508 (7th Cir. 2022) (citing *United States v. Tucker*, 404 U.S. 443, 448–49 (1972)). A court that bases a sentence on clearly erroneous facts commits a "significant procedural error." *United States v. Swartz*, 145 F.4th 727, 730 (7th Cir. 2025) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). To successfully challenge a sentence on this ground, Hinz must show that the court relied on false information. *United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018). Reliance occurs when a court pays "explicit attention" to the misinformation, "founds its sentence at least in part on it, or gives specific consideration to the misinformation before imposing sentence." *Id.* (quoting *United States v. Chatman*, 805 F.3d 840, 844 (7th Cir. 2015)).

Although the district court's order incorrectly stated that Hinz violated the gun-related conditions of his supervision, the hearing transcript and the order as a whole demonstrate that the court did not rely on that conduct when sentencing Hinz. At the hearing, the court confirmed that Hinz admitted only to violating conditions related to using or possessing a controlled substance, failing to report to his probation officer, failing to maintain lawful employment, and committing another crime. Regarding Hinz's admission that he committed another crime, there was some initial confusion about which offense Hinz committed because the state cases from 2024 and 2025 had been resolved together. But the court concluded correctly that Hinz had admitted to—and the court could consider—the charges from the 2025 state case involving bail jumping and possession of methamphetamine even though they had been dismissed. *See* U.S.S.G. § 7C1.1 App. Note 1 (violation may be charged whether or not defendant has been subject of a separate federal, state, or local prosecution for such conduct, and the grade of violation depends on defendant's actual conduct).

We are also assured that the court was not confused about Hinz's position on the shooting incident or gun possession. The court's statements at the hearing confirm its understanding that Hinz did not admit those alleged violations. Twice the court stated that it set aside the allegations of gun-related conduct, and it confirmed that the government was pursuing violations based only on Hinz's admissions.

Hinz asserts that the written order's statement that he faced "new charges" but had not admitted to the "underlying conduct" is evidence of the court's reliance on inaccurate information. He argues that the court's ambiguous reference followed by a discussion of the shooting incident and the

prohibited items found in his apartment suggests that the court speculated, or was confused, about whether Hinz was facing new charges for the gun-related conduct.

But the court's written order later recognized that Hinz was not charged in relation "to his alleged role in the February 15, 2025, shooting incident" or the seizure of prohibited items from his apartment. The order also stated that, because the government did not pursue those alleged violations, it would not consider them. And these written statements are consistent with the district court's oral statements at the hearing that Hinz had not admitted to any conduct related to the shooting, and that it would not consider the incident. Indeed, at the end of the court's written order, it summarized that the basis for its decision to revoke was the stipulated violations, highlighting that Hinz's multiple instances of methamphetamine possession and refusals to comply with drug testing mandated revocation.

Hinz next argues that the court relied on unproven conduct to conclude that he was "violent when he's not in treatment" because the government did not submit any such evidence. But when deciding whether to revoke supervision and require reimprisonment, a court may consider, among other factors, the defendant's history and characteristics. 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(1)). And generally, a "sentencing judge may rely on a presentence report if it 'is well-supported and appears reliable.'" *United States v. Marks*, 864 F.3d 575, 580 (7th Cir. 2017) (quoting *United States v. Black*, 636 F.3d 893, 897 (7th Cir. 2011)).

Hinz speculates that the court relied on the gun-related allegations to conclude that he was violent, but we are not convinced. The court stated that it reviewed the PSR from Hinz's underlying federal conviction, which included Hinz's

statements to the probation officer that he had been prescribed medications largely to "suppress his violent behavior," and that he is "easily agitated, irritable, and violent" without them. The PSR also highlighted that during a competency evaluation, Hinz recounted to a psychologist his "history of anger, irritability, violent impulses, and hostility." Hinz does not argue that his previous statements were inaccurate or unreliable. His speculation that the court improperly relied on conduct that he explicitly denied or on the government's representation that it would bring charges for gun trafficking is not compelled by the record.

Finally, Hinz contends that the district court exceeded its authority by imposing a condition on his release that he "is to be registered with local law enforcement agencies and the state attorney general before his release from confinement." He argues that this condition is improper because he faces no term of supervision following his release.

By imposing the registration requirement here, the district court exceeded its authority. Aside from conditions of supervised release, a court may not "impose restrictions on a defendant, effective after he completes the prison term to which the judge sentenced him." *United States v. Zamudio*, 718 F.3d 989, 990 (7th Cir. 2013). Given that Hinz faces no term of supervised release after he is released from prison, we see no authority for the district court to impose a registration requirement. To the extent that the requirement is meant to trigger the Bureau of Prisons' notification obligation in 18 U.S.C. § 4042(b)(1), we likewise see no basis for its inclusion. Hinz has been convicted of a "drug trafficking crime," so the Bureau might be required to notify local, state, and tribal authorities were Hinz "released on supervised release." 18 U.S.C. § 4042(b)(1), (3)(A). But Hinz is not being released to supervision. And, in any event, whether the

notification requirement applies is a determination best left to the Bureau. *See id.* §§ 3621, 3624 (discussing Bureau's responsibility to administer sentences and manage a prisoner's release).

In closing, we note that Hinz says that district courts in the Western District of Wisconsin regularly impose this requirement on prisoners who, like him, are not facing a term of supervised release. By our count, we have identified 20 such instances. We caution that the inclusion of this requirement absent a term of supervised release is outside the district court's authority.

Because the district court exceeded its authority in imposing the registration requirement, we STRIKE it from the judgment. As modified, the judgment is AFFIRMED.